**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-20292

SUMER DISTRIBUTING CORP.; JONATHAN KATZEN,

Plaintiffs-Appellants,

VERSUS

PEPPER HAMILTON, LLP; RAMSEY COOK LOOPER & KURLANDER, LLC;
WILLIAM S. RAMSEY PhD; ERIC TUCKER; WILLIAM COOK

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(H-99-CV-4233)
May 14, 2002

Before DUHÉ, DeMOSS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Sumer Distributing Corporation ("Sumer") and Jonathan Katzen ("Katzen") (collectively, "Appellants") appeal the district court's grant of a Rule 50 judgment as a matter of law in favor of Appellees in this legal malpractice case. Because we find no legally sufficient evidentiary basis for a reasonable jury to find

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

legal malpractice, we AFFIRM the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

Katzen created Sumer in 1997 to distribute and sell a dietary supplement ("the product"). The product was composed of various fruit juices, tea and honey and, according to its inventor, Dr. George Merkl ("Merkl"), is processed by a solar distillation process which produces "bound" alcohol. Sumer retained the law firm of Ramsey, Cook, Looper & Kurlander ("RCLK")[1] in December 1997 to advise whether it was legal to distribute the dietary supplement, and to review a mock-up label to determine whether alcohol content should be disclosed. Sumer provided RCLK with a copy of a draft label and a retainer check. The parties also signed an engagement agreement stating that the attorneys were engaged to "provide legal services associated with reviewing product labels and other documents for compliance with laws and regulations administered by the Food and Drug Administration."

The draft label disclosed that the product contained 7% alcohol by volume. William Cook ("Cook"), a partner at RCLK, raised concerns about the alcohol content, which could have some effect on how the product could be labeled and marketed. Katzen explained that the alcohol is not intoxicating, and referred the attorneys to Merkl for further explanation. Merkl assured the attorneys that because the alcohol was chemically "bound," consumption would not

---

[1] The individually named Appellees were attorneys with RCLK.

result in intoxication, and the product would not test as containing ethanol.[2] Sumer did not ask its attorneys to have the product independently tested. The attorneys then advised Sumer that based on this information, alcohol content need not be disclosed, and the product could be marketed as a dietary supplement. Based on this advice, Sumer commenced packaging and marketing the product throughout Texas and the United States in early 1998.

In late December of 1998, RCLK dissolved and three members of the firm, William Ramsey ("Ramsey"), Cook, and Eric Tucker ("Tucker"), joined Pepper Hamilton. There, the individual attorneys continued representing Sumer. All subsequent communications were made on Pepper Hamilton letterhead.

In April 1999, the Texas Department of Health ("TDH"), after routinely inspecting Sumer's facilities, decided to test the product. Following the tests, which showed that the product contained 7% alcohol by volume, TDH embargoed all of Sumer's product. Ramsey, Cook and Tucker continued to represent Sumer, giving advice on various issues until mid-June 1999. Upon learning of the test results, Ramsey advised Sumer that its product had been misbranded because it failed to disclose that the product's alcohol content exceeded 5% by volume. In addition, Ramsey advised Sumer

---

[2] As Katzen acknowledged at trial, Merkl lied to the attorneys. Later testing did indicate ethanol contained in the product. Ethanol is the kind of alcohol that must be disclosed on labels, and that precludes the marketing of a product as a dietary supplement.

that neither the Food and Drug Administration ("FDA") nor the TDH would permit a product to be marketed as a dietary supplement if the product contained alcohol in excess of 5%.

Thereafter, Sumer discharged Pepper Hamilton and the individual attorneys as counsel. In September 1999, TDH filed suit against Sumer seeking various relief including monetary damages, penalties, injunctive relief and product destruction. Although Sumer notified Pepper Hamilton of the litigation, the firm did not join in or defend the suit. The state court approved a settlement in July 2000, which included the destruction of the entire inventory.

Appellants filed this legal malpractice case in December 1999, and moved for partial summary judgment seeking a declaration that the product was misbranded. They also sought dismissal of Appellees' "failure to mitigate" affirmative defense. The district court held that the product was misbranded, but declined to dismiss the affirmative defense.

Appellees moved for summary judgment on January 26, and for a continuance of the trial so the court could consider the motions. The court denied the continuance. Appellants did not respond to the summary judgment motions by docket call on February 5.[3] Prior to the start of trial the next day, the court granted summary judgment. Upon Appellants' counsel's urging, the court delayed the

---

[3] They were not required to under the Federal Rules of Civil Procedure.

effect of summary judgment pending submission of Appellants' evidence at trial. At the close of Appellants' case, the district court granted Appellees' motion for Rule 50 judgment as a matter of law, finding that the evidence presented was legally insufficient for a reasonable jury to find for Appellants.[4] Appellants timely appeal.

## STANDARD OF REVIEW

Appellants seek reversal of the district court's grant of Rule 50 judgment. We review the grant of a Rule 50 motion de novo, viewing the evidence in a light most favorable to the non-movant. Insurance Co. of N. Am. v. Aberdeen Inv. Servs., Inc., 253 F.3d 878, 883-84 (5th Cir. 2001). Federal Rules of Civil Procedure, Rule 50(a) permits a trial judge to enter a judgment as a matter of law even when the case is being tried to a jury. "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim..." Id.; see Aquillard v. McGowen, 207 F.3d 226, 228-29 (5th Cir. 2000).

## DISCUSSION

---

[4] The district court also granted Sumer's motion for summary judgment on two factual issues; Tucker's motion for summary judgment that he, as an associate, did not commit legal malpractice; and defendants' motion to dismiss Sumer's fraud and misrepresentation claims; and dismissed Katzen as a plaintiff. None of these decisions is appealed.

Sumer's underlying suit sought a determination that Appellees committed legal malpractice. Under Texas law, to recover on a claim for legal malpractice, the plaintiff must prove that an attorney owed a duty of due care to the plaintiff, he breached that duty, the breach proximately caused the plaintiff's injuries, and damages resulted. Cosgrove v. Grimes, 774 S.W. 2d 662, 664 (Tex. 1989). The duty of due care is "the standard of care that a reasonably prudent attorney would exercise." Peeler v. Hughes & Luce, 868 S.W. 2d 823, 827 (Tex. App. - Dallas 1993), aff'd, 909 S.W. 2d 494 (Tex. 1995).

Sumer argues that Appellees had a duty to investigate the truth of Merkl's statements, or to advise them to do so. Appellees argue that they owed no duty to Sumer beyond that contracted for, which was to provide correct legal advice. Furthermore, they argue that they fulfilled that duty. Appellees informed Sumer that if the product contained alcohol, it had to be declared on the label and the product could not be marketed as a dietary supplement. Sumer, Katzen and Merkl told Appellees that the product would not test as containing alcohol. Based on this information, Appellees advised Sumer that alcohol did not have to be listed on the label and the product could be sold as a dietary supplement. This was correct and adequate advice under the circumstances. Any mistake was made because of inaccurate representations by Sumer, Katzen and Merkl.

Sumer's action fails as a matter of law because Appellees breached no duty. The attorneys were asked for legal advice, and the advice they gave was correct. We decline to find any duty to

6

independently test the product or verify the veracity of Merkl's statements, when such actions were not requested by Sumer. A reasonably prudent attorney is only required to do that for which he was retained. See McCarty v. Browning, 2001 WL 1041812 (Fla. Dist. Ct. App. Sept. 12, 2001).

Appellants further argue that the district court improperly constructed inferences from the evidence in granting a Rule 50 judgment, and in so doing usurped the role of the jury. This argument has no merit. Even during a jury trial, a court may grant a motion for judgment as a matter of law, using the Rule 50 standard. Aquillard, 207 F.3d at 228-29.

Appellants request that if we reverse the district court's judgment, we also reverse its denial of their motion to dismiss the "failure to mitigate damages" affirmative defense. However, because we affirm the district court's judgment, we need not and do not reach this issue.

CONCLUSION

Because Appellees did not breach any duty owed to their client, we find that the district court's grant of Rule 50 judgment was correct, and therefore AFFIRM.